IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WARREN DUNYAN, | : Civ. No. 1:23-CV-354 |
| | : |
| Plaintiff, | : |
| | : |
| v. | : (Chief Magistrate Judge Bloom) |
| | : |
| EAGLE GRAPHICS, INC. d/b/a | : |
| EAGLE GRAPHICS, | : |
| | : |
| Defendant. | : |

## MEMORANDUM OPINION

### I.  Introduction

This case is before us on a motion for summary judgment filed by the defendant, Eagle Graphics. (Doc. 50). The plaintiff, Warren Dunyan, initiated the action after he was terminated from Eagle Graphics in 2022. (Doc. 1). Dunyan contends that he was terminated because of his age and disabled status, that he was subjected to a hostile work environment, and that his termination was retaliation for protected activity. (*Id.*). Dunyan brings his claims pursuant to the Americans with Disabilities Act ("ADA"), the Age Discrimination in Employment Act ("ADEA"), and the Pennsylvania Human Relations Act ("PHRA"). (Doc. 17).

Eagle Graphics has moved for summary judgment, arguing that the undisputed material facts show it is entitled to judgment as a matter of law. (Doc. 50). For the following reasons, we will grant the motion in part and deny the motion in part.

## II. Background

Warren Dunyan began employment with Eagle Graphics on or about September 13, 2021. (Doc. 53-11). Dunyan was 52 years old throughout his employment. (Doc. 51 ¶ 29). Dunyan had a DUI charge pending against him when he was hired, which he disclosed to Eagle Graphics' president Mark Jocham when he was interviewed for the job. (Doc. 53-12 at 14). In October of 2021, Dunyan injured his finger in the workplace in a manner which limited the use of his right hand. (Doc. 51-12). Later that month, Dunyan was transferred from his position of Press Operator to a position in Bindery. (Docs. 51 ¶ 8; 53-2 ¶ 8; 53-6 at 12).

Dunyan alleges that during the "last several months" of his employment, he disclosed a leg and foot injury to his manager, Andy Dumbauld, and disclosed a double hernia to Human Resources professional Nikki Stauffer. (Doc. 53-3 ¶¶ 22, 26). Thereafter, he alleges that Dumbauld made "several" discriminatory comments about him,

2

such as: "Can you do the job? It pains me to see you moving that way because of your foot," and "[t]he young guy is running circles around you, are you able to keep up?" (Doc. 53-6 at 42, 43). Dunyan testified that he reported these comments to Jocham. (*Id.* at 40). For its part, Eagle Graphics claims Dunyan never complained to any manager that he was being discriminated against. (Doc. 51 ¶ 21).

Dunyan also testified that he disclosed his double hernia to Stauffer and asked her about possible short- and long-term disability leave. (Doc. 53-6 at 14). Stauffer testified she remembers that conversation, but only in the context of Dunyan potentially getting surgery to avoid jail time and does not remember any conversation related to disability leave. (Doc. 53-17 at 11).

On August 15, 2022, Dunyan called out of a work shift because of a court appearance related to his DUI charge, and claims he said, "I'll be in [for my shift on] Thursday if I don't go to jail." (Doc. 51-16). Dunyan was terminated on August 26, 2022. (Doc. 51 ¶ 19). Eagle Graphics claims Dunyan was terminated because Eagle Graphics understood Dunyan to be headed to jail soon. (*Id.*; Doc. 51-3). Dunyan disputes that, saying the true reasons for terminating him were discriminatory, and

that any concern about an impending jail sentence was pretextual. (Doc. 53 at 16-20; Doc. 53-1 ¶ 19). Dunyan claims he did not have any disciplinary or performance issues brought to his attention prior to his termination. (Doc. 53-6 at 12). Dunyan also asserts that his termination constituted age discrimination, in that someone 20 years younger replaced him. (Doc. 53-3 ¶ 38).

On February 8, 2023, Dunyan filed a complaint against Eagle Graphics. (Doc. 1). Dunyan amended the complaint on November 11, 2023. (Doc. 17). Eagle Graphics then filed the instant motion for summary judgment, which is fully briefed and ripe for resolution. (Docs. 50, 52, 53, 55). After consideration, we will deny the motion as to the claims of discrimination, grant the motion as to certain retaliation claims, deny it as to other retaliation claims, and grant the motion as to the hostile work environment claims.

## III.  Discussion

### A. Motion for Summary Judgment – Standard of Review

The defendant has filed a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Rule 56(a) provides that a court shall grant summary judgment "if the movant shows that

there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The materiality of the facts will depend on the substantive law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). Thus, "[o]nly disputes over facts that might affect the outcome of the suit under governing law" will preclude summary judgment. *Id.* A dispute is only genuine if a reasonable juror could find in favor of the nonmoving party. *Id.*

The moving party bears the initial burden to "demonstrate the absence of a genuine issue of material fact," relying on pleadings, depositions, affidavits, and other evidence in the record. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant "successfully points to evidence of all of the facts needed to decide the case on the law," the nonmovant can still defeat summary judgment by pointing to evidence in the record which creates a genuine dispute of material fact and from which a jury could find in its favor. *El v. Southeastern Pennsylvania Transp. Auth. (SEPTA)*, 479 F.3d 232, 238 (3d Cir. 2007). However, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted). A court may not make credibility determinations or

weigh the evidence, but "must view the facts in the light most favorable to the non-moving party." *Hugh v. Butler County Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).

### B. The Defendant's Motion for Summary Judgment will be Granted in Part and Denied in Part.

Dunyan's complaint asserts claims of discrimination, retaliation, and a hostile work environment under the ADA, ADEA, and PHRA. (Doc. 17 ¶¶ 44-69). At the outset, we note these claims are subject to essentially the same legal standards and analysis. *Newman v. GHS Osteopathic, Inc.*, 60 F.3d 153, 157 (3d Cir. 1995) (explaining the methods and manner of proof under these statutes are interchangeable); *Tinehimer v. Cemcolift, Inc.*, 292 F.3d 375, 382 (3d Cir. 2002) (explaining that the PHRA mimics the ADA and ADEA and so no separate analysis is required) (citing *Kelly v. Drexel University*, 94 F.3d. 102, 105 (3d Cir. 1996). Accordingly, we will analyze Dunyan's PHRA claims within the context of his ADA and ADEA claims.

After consideration, we will deny the motion as to Dunyan's claims of discrimination under the ADA, ADEA, and PHRA, as well as his retaliation claims based on reporting disability discrimination. The motion will be granted as to the remainder of Dunyan's claims.

6

1. **The Motion Will be Denied as to the Discrimination Claims.**

    a. **ADEA Discrimination.**

To state a *prima facie* case of age discrimination, a plaintiff must show (1) that he is 40 years of age or older; (2) that he suffered an adverse employment action; (3) that he was qualified for his position; and (4) that he was replaced by a sufficiently younger individual giving rise to an inference of discrimination. *Smith v. City of Allentown*, 589 F.3d 684, 689 (3d Cir. 2009).

Dunyan argues that Dumbauld's alleged comment that "the young guy is running circles around you" constitutes direct evidence of age discrimination and relieves him of his burden to plead a prima facie case in accordance with the elements above. (Doc. 53 at 18). This argument fails. While it is possible to demonstrate an ADEA violation through direct evidence, the alleged comment by Dunyan's supervisor does not constitute direct evidence of discrimination. *See Stone v. Trader Joe's Company*, 186 F. Supp. 3d 395 (E.D. Pa. 2016) (quoting *Weightman v. Bank of N.Y. Mellon Corp.*, 772 F. Supp. 2d 693, 702 (W.D. Pa. 2011)) (if discrimination must be inferred "from the employer's remarks or actions, then the evidence is not direct evidence of discrimination.").

Moving to the prima facie case, Eagle Graphics does not dispute that Dunyan meets the first two elements but argues that the undisputed facts show the third and fourth elements are not met. (Doc. 52 at 10, 19). To be "qualified," courts assess if the individual "satisfies the prerequisites for the position, such as possessing the appropriate educational background, employment experience, skills, licenses, etc.," and "whether or not the individual can perform the essential functions of the position held or desired, with or without reasonable accommodation." *Gaul v. Lucent Technologies, Inc.*, 134 F.3d 576, 580 (3d Cir. 1998). Courts considering a prima facie case should not focus on specific contexts discussed by precedent, but on the "general principle" that a plaintiff such as Dunyan must offer evidence "adequate to create an inference" of discrimination, and there are "myriad of ways such an inference can be created." *EEOC v. Metal Service Co.*, 892 F.3d 341, 348 (3d Cir. 1990) (citing *International Broth. of Teamsters v. U.S.,* 431 U.S. 324, 358 (1977)).

Dunyan presents evidence that he was qualified for the Binder position because of his past employment in other warehouse and assembly settings. (Doc 53-7). Eagle Graphics cites testimony from its

managers that Dunyan was unable to fulfill certain essential functions of the Press Operator position he was initially hired for and that, as a Binder, Dunyan once received verbal counseling from a supervisor. (Doc. 51 ¶ 6; 51-4 at 6; 51-7 at 9-10). However, when it terminated him, Eagle Graphics did not point to any inability to perform essential Binder functions, nor to Dunyan's verbal counseling, relying solely on its understanding that Dunyan would soon be sentenced to jail time. (Doc. 51-3). Given that Dunyan worked as a Binder for roughly ten months, but was only once verbally counseled on his performance, was never written up, and was not terminated for his lack of ability, we conclude that this evidence is adequate to show Dunyan had the prerequisite skills for, and could perform the "essential functions" of, a Binder.

As to the fourth element, replacement by a substantially younger individual, Dunyan has alleged in his counterstatement of material facts[1] that two individuals replaced him, including Timothy Hugendubler, who

---

[1] Defendants argue this document should be stricken from the record, as the plaintiff did not seek leave of court to file it. (Doc. 55 at 1, n. 1). While we agree that this document is not procedurally proper, we have carefully considered the entirety of the record and do not find it necessary to strike it from the record. *See e.g.*, *Risser v. Steelton Highspire School Dist.*, 2019 WL 1330356, at *1 n.1 (M.D. Pa. Mar. 25, 2019).

the evidence shows was 33 years old when he was hired just three days after Dunyan's termination. (Docs. 53-3 ¶¶ 38-39; 53-19 at 12). Eagle Graphics argues, *inter alia*, that "no individual replaced" Dunyan and cites to the same evidence, a roster of Bindery employees showing their ages, to support that proposition. (Doc. 52 at 14 (citing Doc. 53-19 at 12)). Viewing that evidence in a light favorable to Dunyan as the nonmovant, a factfinder could conclude that Dunyan was replaced by a sufficiently younger individual. Therefore, he has met his prima facie burden to show age discrimination.

When assessing claims of discrimination under the ADA, ADEA, or Title VII, we apply the *McDonnell Douglas* burden shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). Under that framework, if the plaintiff sets forth a prima facie case of discrimination, the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for the adverse employment action. *Id.* Should the defendant meet that burden, the burden shifts back to the plaintiff to demonstrate that the proffered nondiscriminatory reason is a pretext for discrimination. *Id.*

10

As discussed, Dunyan has met his prima facie burden.  But Eagle Graphics provides a legitimate, nondiscriminatory reason for Dunyan's termination: his "impending jail sentence." (Doc. 51-3).  This proffered reason satisfies the defendant's relatively light burden under *McDonnell Douglas* to provide a legitimate, nondiscriminatory reason for Dunyan's termination.  *See Fuentes*, 32 F.3d at 763 (characterizing the employer's burden at this stage as "relatively light").

The burden then shifts back to Dunyan, who must show evidence which would permit the factfinder to either "(1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes*, 32 F.3d at 764 (citing *St. Mary's Honor Center v. Hicks*, 509 U.S. 502 (1993)).  Dunyan argues Eagle Graphics' justification is pretextual for three reasons: first, the defendants have made inconsistent statements about who was responsible for the termination; second, the timing between Dunyan's complaint and his termination is unduly suggestive; and third, Eagle Graphics' reliance on Dunyan's possible jail sentence was pretextual because it knew he was potentially facing a jail sentence when it hired

him and because Dunyan never said he had been sentenced to jail. (*Compare* Docs. 53-12 at 47 *with* 53-13 at 68, 53-20 at 23-24, and 53-21 at 32; 51-3, 53-3 ¶¶ 22, 26, 53-12 at 14, 53-13 at 20, 53-17 at 14; 53-22).

We conclude that these circumstances, taken together, could allow a jury to find Eagle Graphics' proffered reasons were pretextual, satisfying Dunyan's burden. Therefore, the motion for summary judgment will be denied as to Dunyan's age discrimination claims under both the ADEA and the PHRA.

### b.  ADA Discrimination

Disability discrimination occurs when an employer takes adverse action that is motivated by the individual's disability or the employer's belief that the individual had a disability, or when the employer fails to make reasonable accommodations for the employee's disability. 42 U.S.C. § 12112(a); *see also Taylor v. Phoenixville School Dist.*, 184 F.3d 296, 306 (3d Cir. 1999); *Fuoco v. Lehigh Univ.*, 981 F. Supp. 352, 361 (E.D. Pa. 2013). A plaintiff establishes a prima facie case of discrimination under the ADA by showing: "(1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable

accommodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination." *Gaul*, 134 F.3d at 580.

The ADA defines a disability as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). The plaintiff must allege that he is able to perform the job without a reasonable accommodation or specify what reasonable accommodation is necessary for him to complete his job's essential functions. *Kiniropoulos v. Northampton Cnty. Child Welfare Serv.*, 917 F. Supp. 2d 377, 387 (E.D. Pa. 2013). The law regarding showing qualification is the same as under the ADEA, discussed above. An adverse employment decision is one that is "serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." *Storey v. Burns Int'l Sec. Servs.*, 390 F.3d 760 251, 263 (3d Cir. 2001).

Dunyan presents no evidence that any of his major life activities were limited, nor of any record showing his impairments. Therefore, we interpret his claim of disability as arising under ground (C), that he was

"regarded as having" an impairment. Under the ADA, an individual "meets the requirement of 'being regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment [.]" 42 U.S.C. § 12102(3)(A). Eagle Graphics argues it did not perceive Dunyan as disabled. (Doc. 53 at 10). Dunyan testified that Dumbauld was aware of his impairment. (Doc. 53-6 at 13). Evidence showing a manager is aware of an impairment is sufficient to show that Eagle Graphics "regarded" Dunyan as impaired. *See e.g.*, *Rubano v. Farrell Area School Dist.*, 991 F. Supp. 2d 678, 692-94 (W.D. Pa. 2014) (manager's awareness of an impairment sufficient to show plaintiff was regarded as disabled without a showing of a prohibited action).

As discussed above, an employee is qualified if they satisfy the prerequisites for the position and can fulfill its essential functions. *Gaul*, 134 F.3d at 580. As to qualifications, our earlier discussion in the context of Dunyan's ADEA claim applies with equal force to the ADA claim. *See Newman*, 60 F.3d at 157. We therefore find Dunyan has satisfied the qualification element of this claim.

14

Eagle Graphics does not dispute that there was an adverse employment action taken against Dunyan, only that the adverse action was a result of discrimination. But, viewing the evidence in the light most favorable to Dunyan, we conclude he has alleged enough to where a reasonable jury could infer he was discriminated against because of real or perceived disabilities. As we have explained, Dunyan has set forth evidence showing that his manager knew of his impairment and made a comment regarding the same prior to Dunyan's termination. We therefore hold that Dunyan has met his prima facie burden showing disability discrimination.

The burden then shifts to the defendant to articulate a legitimate non-discriminatory reason for termination. Eagle Graphics presents the same justification as on the ADEA claim: it terminated Dunyan because it understood him to be headed to jail. (Doc. 51-3). As before, we find this sufficient to meet the defendant's relatively light burden, shifting the burden back to Dunyan. Dunyan also relies on the same grounds as above: inconsistency in Eagle Graphic's answers about who decided to terminate Dunyan, temporal proximity of termination to his reports, and genuine issues of material fact relating to Eagle Graphics' knowledge of

his potential imprisonment.  (Doc. 53 at 16-20).  We again conclude that when viewing the evidence in a light most favorable to Dunyan, he has shown enough to meet his burden here.

For that reason, the motion for summary judgment will be denied as to the claims that Dunyan was terminated in violation of the ADA and the disability component of the PHRA.

## 2.   The Motion Will be Granted in Part, Denied in Part as to the Retaliation Claims.

To state a prima facie case of retaliation under the ADA, a plaintiff must show (1) protected employee activity; (2) an adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action. *See* 42 U.S.C. § 12203(a); *Williams v. Phila. Housing Auth. Police Dep't*, 380 F.3d 751, 759 (3d Cir. 2004) (overruled by statute on other grounds as stated in *Robinson v. First State Cmty. Action Agency*, 920 F.3d 182, 187-89 & n.30 (3d Cir. 2019)).  This standard applies with equal force to Dunyan's ADEA claim and the corresponding PHRA claims.  *See Newman*, 60 F.3d at 157; *Tinehimer,* 292 F.3d at 382.

16

Dunyan contends that he engaged in protected activity when he made a simultaneous complaint of age and disability discrimination to Jocham, and that this complaint resulted in Dunyan's termination. (Doc. 53 at 23). Dunyan testified he complained to Jocham in late July or early August of 2022. (Doc 53-6 at 12). Dunyan points to his own testimony as evidence that his complaint was of both age and disability discrimination. (Doc. 53 at 23 (citing to Doc. 53-6 at 40)). We agree that Dunyan's testimony establishes that he complained, and that the complaint was related to Dumbauld's comments about Dunyan's physical impairments. (Doc 53-6 at 12-14). But his testimony explicitly disavows that he made an age discrimination complaint to Jocham or anyone else:

> [Attorney Morcum]: Did you ever complain to Mark Jocham that you were being discriminated against based on your age?
>
> [Dunyan]: No.
> . . .
> [Attorney. Morcum]: Was there any [other] member of management that you went to and complained to that you were discriminated against […] ?
> . . .
> [Dunyan]: No.

(*Id.* at 40-41).

Dunyan presents no other evidence that he engaged in protected activity related to his age. Given his testimony, we do not think a

reasonable jury could believe Dunyan engaged in protected activity related to age discrimination. Accordingly, we will grant the motion for summary judgment as to retaliation claims based on age discrimination.

As to his claim of ADA retaliation, Eagle Graphics does not dispute that Dunyan's complaint to Jocham would qualify as protected activity but argues that there is insufficient evidence to show that complaint occurred, pointing to Jocham's testimony that Dunyan never made a complaint to him related to age or disability. (Doc. 53-12 at 13-14). Dunyan testified that he did make such a complaint. (Doc. 53-6 at 40). There is plainly a dispute as to the material fact of Dunyan's verbal complaint, and we resolve that dispute in Dunyan's favor. We therefore conclude that his testimony is sufficient to show he engaged in protected activity related to disability. *See Paladino v. Newsome*, 885 F.3d 203, 209 (3d Cir. 2018) (explaining that even a single piece of self-serving testimony, if made by a witness with personal knowledge of the issue and not outweighed by other evidence, is sufficient to survive summary judgment). The parties agree the termination qualifies as an adverse action here, satisfying the second element of Dunyan's retaliation claim.

We further conclude that Dunyan has shown causation between his protected activity and the adverse action. One month is sufficient temporal proximity to infer a causal connection. *See e.g. Fasold v. Justice*, 409 F.3d 178 (3d Cir. 2005) (three months between protected activity and adverse action sufficient to find temporal proximity). Additionally, the totality of the circumstances, including the temporal proximity and Dunyan's assertion that his complaints were ignored by Eagle Graphics, are sufficient to establish a causal connection between Dunyan's protected activity and his termination. *See Ellingsworth v. Hartford Fire Insurance Company*, 247 F. Supp. 3d 546 (E.D. Pa. 2017) (ten-month temporal proximity between protected activity and discharge alone did not prove causation, but totality of allegations, including a failure to investigate, showed causation); *Marra v. Phila. Housing Auth.*, 497 F.3d 286, 302 (3d Cir. 2007) ("[A] plaintiff may rely on a 'broad array of evidence' to demonstrate a causal link between his protected activity and the adverse action taken against him.") (citation omitted). Accordingly, we will deny Eagle Graphics' motion as to the retaliation claims based on reporting disability discrimination.

### 3.    The Motion for Summary Judgment Will be Granted as to all Hostile Work Environment Claims.

To state a hostile work environment claim, the plaintiff must demonstrate (1) intentional discrimination based on a protected characteristic—here, age and disability; (2) that "the discrimination was severe or pervasive"; (3) he was detrimentally affected by the discrimination; (4) that the discrimination "would have detrimentally affected a reasonable person in like circumstances"; and (5) employer liability. *Komis v. Sec'y of U.S. Dep't of Labor*, 918 F.3d 289, 293 (3d Cir. 2019).

Conduct is considered severe or pervasive only if it alters the terms and conditions of the plaintiff's employment. *Faragher v. City of Boca Raton*, 524 U.S. 775, 786 (1998). The Third Circuit has repeatedly cautioned that "[i]solated incidents and 'offhanded comments'" do not rise to the level of severe and pervasive conduct. *Stucke v. City of Philadelphia*, 685 F. App'x 150, 153 (3d Cir. 2017). Further, to establish an "abusive working environment," a plaintiff must show both that the environment was objectively hostile, and that the plaintiff perceived it as such. *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 22 (1993).

Even assuming *arguendo* that Dumbauld's alleged comments meet the first three elements described above, Dunyan has not established that these comments were so "severe or pervasive" as to alter the conditions of Dunyan's workplace.  Comments that amount to "simple teasing, offhand comments, and isolated incidents" are not severe. *Faragher*, 524 U.S. at 788.  Similarly, the Third Circuit has explained that a "[h]andfull of incidents" does not show pervasiveness. *Wright v. Providence Care Center, LLC*, 82 F. App'x 85, 97 (3d Cir. 2020).  Under these standards, two off-hand comments are clearly insufficient to show severe or pervasive conduct.  This is fatal to Dunyan's claims of a hostile work environment, and accordingly, we will grant summary judgement as to those claims.

## IV.  Conclusion

For the foregoing reasons, the defendants' motion for summary judgment (Doc. 50) will be GRANTED IN PART AND DENIED IN PART as follows:

1. The motion will be GRANTED as to Dunyan's hostile work environment claims and his retaliation claims based on reporting age discrimination; and

2. The motion will be DENIED as to Dunyan's ADA, ADEA, and PHRA discrimination claims, as well as the ADA and PHRA retaliation claims based on reporting disability discrimination.

An appropriate order follows.

*s/ Daryl F. Bloom*
Daryl F. Bloom
Chief United States Magistrate Judge

Dated: May 5, 2025